1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HUMBERTO PALMA,                    ) Case No. CV 12-9123-JPR
                                   )
                Plaintiff,         )
                                   )
        vs.                        ) MEMORANDUM OPINION AND ORDER
                                   ) AFFIRMING THE COMMISSIONER
CAROLYN W. COLVIN,                 )
Acting Commissioner of             )
Social Security,[1]                )
                                   )
                Defendant.         )
                                   )
_____

I.    PROCEEDINGS

      Plaintiff seeks review of the Commissioner's final decision
denying his application for Social Security disability insurance
benefits ("DIB") and supplemental security income benefits
("SSI").  The parties consented to the jurisdiction of the
undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).
This matter is before the Court on the parties' Joint
Stipulation, filed August 30, 2013, which the Court has taken

_____

      [1]    On February 14, 2013, Colvin became the Acting
Commissioner of Social Security.  Pursuant to Federal Rule of
Civil Procedure 25(d), the Court therefore substitutes Colvin for
Michael J. Astrue as the proper Respondent.

1

1  under submission without oral argument.[2]  For the reasons

2  discussed below, the Commissioner's decision is affirmed and this

3  action is dismissed.

4  **II.  BACKGROUND**

5       Plaintiff was born on January 12, 1959.  (AR 169, 173.)  He

6  completed high school.  (AR 204.)  Plaintiff's previous work was

7  collecting and recycling scrap metal, glass, cans, and plastic

8  bottles.  (AR 56-57, 200, 209-10.)

9       On March 31, 2008, Plaintiff filed applications for DIB and

10 SSI.  (AR 85-86, 169-77.)  He alleged that he had been unable to

11 work since March 18, 2008, because of "[o]pen heart surgery, high

12 cholesterol, high blood pressure, [and] diabetes."  (AR 199.)

13 After Plaintiff's applications were denied, he requested a

14 hearing before an Administrative Law Judge.  (AR 96.)

15      A hearing was held on May 12, 2010, at which Plaintiff, who

16 was represented by counsel, testified, as did a vocational expert

17 ("VE").[3]  (AR 52-78.)  In a written decision issued August 10,

18 2010, the ALJ determined that Plaintiff was not disabled.  (AR

19 30-38.)  On August 8, 2012, the Appeals Council denied review.

20 _____

21      [2]   Throughout the joint stipulation, Plaintiff's counsel
   refers to Plaintiff by different wrong names and the wrong
22 gender.  (See, e.g., J. Stip. at 4, 7, 11 (referring to Plaintiff
   as "Ms. Palma"), 5 (twice referring to Plaintiff as "Jessie
23 Aguirre"), 9 (referring to Plaintiff as "Ms. Mendez" and "Ms.
   Aguirre").)  Such sloppiness does not instill confidence in
24 counsel's arguments.  The Court has endeavored, however, not to
   factor the presentation of the joint stipulation into its
25 analysis.

26
        [3]   A hearing was first held on January 19, 2010, but the
27 ALJ ended it without taking any testimony after Plaintiff
   requested a postponement so he could obtain counsel.  (AR 79-84.)
28

1  (AR 7-9.)  This action followed.

2  **III.  STANDARD OF REVIEW**

3       Pursuant to 42 U.S.C. § 405(g), a district court may review

4  the Commissioner's decision to deny benefits.  The ALJ's findings

5  and decision should be upheld if they are free of legal error and

6  supported by substantial evidence based on the record as a whole.

7  § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct.

8  1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d

9  742, 746 (9th Cir. 2007).  Substantial evidence means such

10  evidence as a reasonable person might accept as adequate to

11  support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter

12  v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than

13  a scintilla but less than a preponderance.  Lingenfelter, 504

14  F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880,

15  882 (9th Cir. 2006)).  To determine whether substantial evidence

16  supports a finding, the reviewing court "must review the

17  administrative record as a whole, weighing both the evidence that

18  supports and the evidence that detracts from the Commissioner's

19  conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

20  1996).  "If the evidence can reasonably support either affirming

21  or reversing," the reviewing court "may not substitute its

22  judgment" for that of the Commissioner.  Id. at 720-21.

23  **IV.   THE EVALUATION OF DISABILITY**

24       People are "disabled" for purposes of receiving Social

25  Security benefits if they are unable to engage in any substantial

26  gainful activity owing to a physical or mental impairment that is

27  expected to result in death or which has lasted, or is expected

28  to last, for a continuous period of at least 12 months.  42

3

1  U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257
2  (9th Cir. 1992).

3      A.   <u>The Five-Step Evaluation Process</u>

4      The ALJ follows a five-step sequential evaluation process in
5  assessing whether a claimant is disabled.   20 C.F.R.
6  §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821,
7  828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).   In the first
8  step, the Commissioner must determine whether the claimant is
9  currently engaged in substantial gainful activity; if so, the
10 claimant is not disabled and the claim must be denied.
11 §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If the claimant is not
12 engaged in substantial gainful activity, the second step requires
13 the Commissioner to determine whether the claimant has a "severe"
14 impairment or combination of impairments significantly limiting
15 his ability to do basic work activities; if not, a finding of not
16 disabled is made and the claim must be denied.
17 §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the claimant has a
18 "severe" impairment or combination of impairments, the third step
19 requires the Commissioner to determine whether the impairment or
20 combination of impairments meets or equals an impairment in the
21 Listing of Impairments ("Listing") set forth at 20 C.F.R., Part
22 404, Subpart P, Appendix 1; if so, disability is conclusively
23 presumed and benefits are awarded.   §§ 404.1520(a)(4)(iii),
24 416.920(a)(4)(iii).   If the claimant's impairment or combination
25 of impairments does not meet or equal an impairment in the
26 Listing, the fourth step requires the Commissioner to determine
27 whether the claimant has sufficient residual functional capacity
28

4

("RFC")[4] to perform his past work; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving that he is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  <u>Id.</u>  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis.  §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since March 18, 2008.  (AR 32.) At step two, the ALJ concluded that Plaintiff had the severe impairments of "coronary artery disease (status post bypass) and diabetes mellitus."  (<u>Id.</u>)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 33.)  At step four, the ALJ found that Plaintiff had the RFC to perform the "full range" of

---

[4]    RFC is what a claimant can do despite existing exertional and nonexertional limitations.  20 C.F.R. §§ 404.1545, 416.945; <u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

light work.[5]  (AR 34-37.)  Based on the VE's testimony, the ALJ
concluded that Plaintiff was able to perform his past relevant
work as a "laborer, salvage," DOT 929.687-022, 1991 WL 688172, as
generally and actually performed.  (AR 37.)  Accordingly, the ALJ
determined that Plaintiff was not disabled.  (AR 37-38.)

**V. DISCUSSION**

Plaintiff contends that the ALJ erred in (1) finding that
his previous job was "past relevant work" and (2) determining
that he could perform his past relevant work as actually and
generally performed.  (J. Stip. at 4-11.)

A.   Background

In an undated disability report, Plaintiff stated that from
2002 to June 2007, he was self-employed as a "recycler,"
"collect[ing] cans and plastic bottles and recycl[ing]" them.
(AR 200.)  In that job, he had to lift and carry "plastic bags
with bottles and cans"; he lifted 10 pounds "frequently," which
was defined as "from 1/3 to 2/3 of the workday," and 50 pounds at
most.  (Id.)  Plaintiff stated that he used "machines, tools, or
equipment" and "technical knowledge or skills" as part of his job
and that he stopped working in June 2007 because he "did not have

---

[5]   "Light work" involves "lifting no more than 20 pounds
at a time with frequent lifting or carrying of objects weighing
up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  The
regulations further specify that "[e]ven though the weight lifted
may be very little, a job is in this category when it requires a
good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg
controls."  Id.  A person capable of light work is also capable
of "sedentary work," which involves lifting "no more than 10
pounds at a time and occasionally lifting or carrying [small
articles]" and may involve occasional walking or standing.
§§ 404.1567(a)-(b); 416.967(a)-(b).

the necessary transportation to continue the job." (AR 199.)
Plaintiff stated that he worked eight hours a day, five days a
week, and earned $240 a month. (AR 200.)

On April 28, 2008, Plaintiff's daughter, Mirza Palma,
completed a work-history report stating that Plaintiff had worked
as a "junk collector" from 2002 to 2007. (AR 209-16.) Palma
wrote that in that job, Plaintiff lifted "6 f[oot] metal pieces,"
cans, and plastics and used "machines, tools, or equipment" and
"technical knowledge or skills." (AR 210.) She checked boxes
indicating that Plaintiff "frequently" lifted "50 [pounds] or
more" and that the heaviest weight he lifted was "50 [pounds]."
(Id.) Palma stated that Plaintiff worked 10 to 12 hours a day,
six days a week, and earned $50 a day. (Id.) A Social Security
earnings summary dated June 30, 2009, showed that Plaintiff
earned $1954 in 2002, $10,547 in 2003, $10,898 in 2004, $11,632
in 2005, and $8035 in 2006. (AR 178.)

At the May 12, 2010 hearing, Plaintiff testified that his
past work involved "go[ing] into the trash cans before the trash
can was empt[ied]" and finding plastic, glass, and aluminum to
recycle. (AR 57.) Plaintiff testified that the most he would
lift would be a bag of recyclable material weighing about 12
pounds; he said he could not lift more than that because "[a]ll
of my life I've always had back problems." (AR 57-58.) After
the materials were collected, Plaintiff's friend, who had a van,
took them to a recycling plant, and he and Plaintiff split the
money he received. (AR 57, 73.) When questioned by the VE,
Plaintiff confirmed that he did not participate in the loading or
unloading of materials. (AR 73.)

7

The VE testified that Plaintiff had previously worked as a "laborer, salvage," which carried a DOT code of 929.687-022 and was "generally regarded as a medium exertional level job" with a specific vocational preparation level of two.[6]  (AR 74.)  The VE further testified that someone of Plaintiff's age with his education and vocational history and who could perform a "full range" of light work would be able to perform the laborer job as Plaintiff actually performed it but not "as classified," presumably referring to the DOT description.  (<u>Id.</u>)

In his decision, the ALJ found that Plaintiff retained the RFC to perform a "full range" of light work.  (AR 34.)  The ALJ found that Plaintiff could perform his past relevant work as a "laborer, salvage," DOT 929.687-022, 1991 WL 688172, which the ALJ noted was "medium" work but "performed at light."  (AR 37.)  The ALJ found that "[t]estimony from both [Plaintiff] and the [VE] provide persuasive evidence that [Plaintiff] performed his past relevant work at a light exertional level which falls within the parameters of his [RFC]."  (<u>Id.</u>)  The ALJ also stated, somewhat contradictorily and without elaboration, that Plaintiff could perform the laborer job "as generally performed" even though it was medium exertion.  (<u>Id.</u>)  The ALJ concluded that Plaintiff was not disabled and denied his claims for benefits.  (AR 37-38.)

---

[6]    An SVP of two "corresponds precisely to the definition of unskilled work embodied in SSA regulations."  <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1990).

   B.   <u>Past Relevant Work</u>

   Plaintiff contends reversal is required because it is "unclear whether the ALJ completed the proper analysis" in determining that Plaintiff had "past relevant work." (J. Stip. at 7.) Petitioner further contends that because he was a "self employed person," the ALJ was required to deduct his "normal business expenses" from his income before determining whether his work as a salvage laborer constituted "substantial gainful work activity." (J. Stip. at 9-10.)

   A job qualifies as past relevant work only if it involved substantial gainful activity. <u>Lewis v. Apfel</u>, 236 F.3d 503, 515 (9th Cir. 2001); 20 C.F.R. §§ 404.1560(b)(1) (defining past relevant work), 416.960(b)(1) (same). Substantial gainful activity is work activity that "involves doing significant physical or mental activities" and "is the kind of work usually done for pay or profit, whether or not a profit is realized." §§ 404.1572(a)-(b), 416.972(a)-(b). "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." <u>Lewis</u>, 236 F.3d at 515; <u>see also</u> §§ 404.1574(b) (defining earnings that will ordinarily show that claimant engaged in substantial gainful activity), 416.974(b) (same); <u>see also</u> SSR 83-34, 1983 WL 31256, at *2 (Jan. 1, 1983) ("The receipt of substantial income by the operator of a one-person business will result in a finding of [substantial gainful activity]."). Thus, if a person's earnings exceed certain amounts set forth in the regulations, he is ordinarily considered to have engaged in substantial gainful activity. <u>See</u> §§ 404.1574(b), 416.974(b). Before determining whether a self-

9

1  employed person's earnings rise to that level, however, the ALJ
2  must first deduct "normal business expenses," among other things,
3  from the gross earnings.[7]  §§ 404.1575(a)(2), (c)(1),
4  416.975(a)(2), (c)(1); <u>accord</u> SSR 83-34, 1983 WL 31256, at *4.

5      Plaintiff does not dispute that his income while working as
6  a salvage laborer exceeded amounts generally considered to
7  indicate substantial gainful activity.[8]  Rather, Plaintiff argues
8  that because he was a "self employed person," the ALJ was
9  required to deduct his "normal business expenses" from his income
10 before determining whether his work as a salvage laborer
11 constituted "substantial gainful work activity." (J. Stip. at 9-
12 10.)  Plaintiff contends that reversal is appropriate because it
13 is "unclear" whether the ALJ performed that analysis. (<u>Id.</u> at
14 7.)

15

16      [7]  If a self-employed person's net earnings do not rise to
17 the level set forth in the regulations, the Social Security
   Administration applies two other tests to determine whether the
18 person engaged in substantial gainful activity. <u>See</u> §§
   404.1575(a)(2), 416.975(a)(2). One test assesses whether the
19 person's "work activity, in terms of factors such as hours,
   skills, energy output, efficiency, duties, and responsibilities,
20 is comparable to that of unimpaired individuals in your community
   who are in the same or similar businesses as their means of
21 livelihood"; the other assesses whether the work activity is
   worth an amount ordinarily considered to be substantial gainful
22 activity "when considered in terms of its value to the business,
   or when compared to the salary that an owner would pay to an
23 employee to do the work you are doing." <u>Id.</u>
24

25      [8]  A person who earned more than $800 a month in 2003,
   $810 a month in 2004, or $830 a month in 2005 is ordinarily
26 considered to have engaged in substantial gainful activity. <u>See</u>
   <u>Substantial Gainful Activity</u>, Social Security, http://www.ssa.
27 gov/oact/cola/sga.html (last accessed Dec. 10, 2013). Plaintiff
   earned $878 a month in 2003, $908 a month in 2004, and $969 a
28 month in 2005. (<u>See</u> AR 178.)

1    During the administrative proceedings, however, Plaintiff —
2    who was represented by counsel at the hearing and before the
3    Appeals Council (see AR 15-16, 52, 131-32, 163-65) — never
4    asserted that he had incurred any business expenses in connection
5    with his work as a salvage laborer, nor did he submit any
6    evidence of such expenses.  Indeed, although Plaintiff presumably
7    used transportation in his work (see, e.g., AR 554 (medical
8    record noting that Plaintiff "[r]ecycle[d] cans but stopped when
9    car broke down")), Petitioner in fact testified that the friend
10   with whom he worked "had a van" and that his friend would take
11   the recyclables to the recycling plant (AR 57, 73).  Thus,
12   nothing indicates that Plaintiff incurred transportation
13   expenses.  Indeed, Plaintiff still does not point to any specific
14   business expense that the ALJ failed to deduct from his earnings;
15   instead, he contends only that reversal is required because the
16   ALJ "did not perform the required analysis." (J. Stip. at 10.)
17   Because nothing indicates that Plaintiff incurred any business
18   expenses, the ALJ's failure to explicitly address the issue was
19   at most harmless error.  See Molina v. Astrue, 674 F.3d 1104,
20   1115 (9th Cir. 2012) (ALJ's error harmless when "inconsequential
21   to the ultimate nondisability determination" (internal quotation
22   marks omitted)); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d
23   1050, 1055 (9th Cir. 2006) (same).  Plaintiff is not entitled to
24   remand on this ground.

25        C.   Ability to Perform Past Relevant Work

26        Plaintiff contends that he "does not have the requisite
27   lifting abilities to perform the past relevant work" as a salvage
28   laborer because that work "as he actually performed it required

1   him to lift up to 50 pounds." (J. Stip. at 7-8.) Plaintiff
2   argues that the ALJ limited him to "light work, i.e., work that
3   requires lifting 20 pounds occasionally and 10 pounds frequently"
4   and "offered no explanation how an individual who is limited to
5   those weights can perform the past work where, as performed, it
6   required lifting of up to 50 pounds." (Id. at 8.)

7       A plaintiff has the burden of proving that his alleged
8   physical or mental impairments prevented him from engaging in his
9   past relevant work, either as he actually performed it or as it
10  is customarily performed in the national economy. See Vertigan
11  v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001); Orteza v.
12  Shalala, 50 F.3d 748, 751 (9th Cir. 1995) (holding that plaintiff
13  has burden to prove inability to return to former type of work,
14  not just former job). "To determine whether a claimant has the
15  residual capacity to perform his past relevant work, the [ALJ]
16  must ascertain the demands of the claimant's former work and then
17  compare the demands with his present capacity." Villa v.
18  Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986). Although the
19  burden lies with the plaintiff at step four, the ALJ still has a
20  duty to make the requisite factual findings to support his
21  conclusions. Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir.
22  2001). Once an ALJ determines that the plaintiff's limitations
23  do not preclude the work as actually performed, the ALJ need not
24  conclude that he can also return to his prior position as
25  customarily performed in the general economy. See id. ("We have
26  never required explicit findings at step four regarding a
27  claimant's past relevant work both as generally performed and as
28  actually performed." (emphasis in original)).

The best source of how a job is generally performed is usually the Dictionary of Occupational Titles ("DOT"). Id. at 845-46; see also Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) ("In making disability determinations, the [SSA] relies primarily on the [DOT] for information about the requirements of work in the national economy." (internal quotation marks omitted)). The DOT describes the position of salvage laborer as collecting "reusable items or waste materials" in containers and inspecting and sorting materials, among other things. DOT 929.687-022, 1991 WL 688172. It is categorized as "[m]edium [w]ork."[9] Id.

Plaintiff argues that the requirements of his past relevant work as he actually performed it exceed his RFC for light work because, as stated in his two disability reports, he lifted a maximum of 50 pounds when working as a salvage laborer. (J. Stip. at 7-8 (citing AR 200, 210).) One of those two reports, however, was completed by Plaintiff's daughter, not Plaintiff (AR 209-16), and the ALJ explicitly found her to be only partially credible (AR 36-37), a finding that Plaintiff has not challenged or even addressed. Moreover, although Plaintiff's own disability report states that the heaviest weight he lifted was 50 pounds (AR 200), at the hearing Plaintiff testified that the heaviest item he lifted was a bag of recyclable materials weighing 12

---

[9] Social Security regulations state that "medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." §§ 404.1567(c), 416.967(c). The Social Security Administration has specified that its exertional classifications "have the same meaning as they have in the exertional classifications noted in the DOT." SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

13

1  pounds; in fact, he claimed that he had always been physically
2  unable to lift more than that because of his lifelong "back
3  problems." (AR 57-58.)  In the joint stipulation, Plaintiff does
4  not specifically address his testimony that he never lifted more
5  than 12 pounds in his previous work but instead merely states,
6  without further elaboration, that "[w]hile [his] hearing
7  testimony was unclear, the vocational reports are not." (J.
8  Stip. at 8.)

9       The ALJ, however, permissibly credited Plaintiff's testimony
10 at the hearing instead of his statements in the disability
11 report.  Contrary to Plaintiff's argument, his testimony at the
12 hearing was not "unclear"; rather, he sufficiently explained his
13 past work, including the lifting requirements, in response to the
14 ALJ's and VE's questions. (See AR 56-58, 73.)  In his decision,
15 moreover, the ALJ specifically stated that "[t]estimony
16 from . . . the claimant . . . provide[d] persuasive evidence that
17 [he] performed his past relevant work at a light exertional
18 level." (AR 37.)  Thus, the ALJ sufficiently indicated that he
19 was crediting Plaintiff's testimony regarding the requirements of
20 his past relevant work.  See SSR 82-62, 1982 WL 31386, at *4
21 (Jan. 1, 1982) (decision that individual has "capacity to perform
22 a past relevant job" must include "finding of fact as to the
23 physical and mental demands of the past job/occupation").

24      Moreover, the ALJ was entitled to reject Plaintiff's
25 statement in his disability report that he lifted a maximum of 50
26 pounds while working as a salvage laborer.  Elsewhere in his
27 decision, the ALJ persuasively discounted Plaintiff's credibility
28 – a finding that Plaintiff does not challenge – based on the lack

of objective medical evidence supporting his complaints, his generally conservative treatment, his noncompliance with treatment recommendations, and several inconsistencies among his various statements.  (AR 34-36.)  Indeed, the disability reports Plaintiff relies upon are themselves contradictory: in one Plaintiff wrote that in his past work he "frequently" lifted 10 pounds and earned $240 a month (AR 200) and in the other his daughter wrote that Plaintiff frequently lifted "50 [pounds] or more," worked six days a week, and earned $50 a day (AR 210). Given Plaintiff's overall lack of credibility, the ALJ permissibly credited his hearing testimony rather than the contradictory statements in his disability report in determining the requirements of his past work.  Because Plaintiff therefore failed to carry his burden of proving that he was unable to perform his past relevant work, <u>see</u> <u>Pinto</u>, 249 F.3d at 844, he is not entitled to remand on this ground.[10]

---

[10]     The ALJ appears to have erred in finding that Plaintiff could perform his past relevant work as "generally performed." (<u>See</u> AR 37.)  As noted, the DOT states that the salvage laborer job was medium work, DOT 929.687-022, 1991 WL 688172, which exceeded Plaintiff's RFC for a full range of light work (AR 34). But that error was harmless because, as discussed above, the ALJ permissibly found that Plaintiff could perform his past relevant work as he actually performed it.  <u>See</u> <u>Molina</u>, 674 F.3d at 1115; <u>Stout</u>, 454 F.3d at 1055; <u>cf.</u> <u>Tweedy v. Astrue</u>, 460 F. App'x 659, 661 (9th Cir. 2011) (declining to address whether claimant could perform past relevant work as generally performed when ALJ correctly concluded that claimant could perform it as actually performed).

VI.    **CONCLUSION**

Consistent with the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g),[11] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 19, 2013

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[11]    This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

16